# Dixon *v.* The State.

*. Indictment for Murder.*

1. *Homicide; admissibility of expert testimony.*—On a trial under indictment for murder, where the evidence adduced by the State tended to show that the defendant had shot and killed the person designated in the indictment between 9 and 10 o'clock at night, and the defendant as a witness denied all connection with the homicide, and testified that throughout the night on which the deceased was killed, he was at a house six miles away from the scene of the homicide and was sick in bed, after a physician who attended the defendant late in the afternoon of the day of the killing, testifies to the defendant having had, at that time high fever and that he was suffering from a malarial attack, that he gave the defendant medicine, and on returning the next morning at 8 o'clock he found him free from fever and in a normal condition, it is competent to ask such witness if the defendant could have walked six miles and killed the deceased the same night on which he had visited him in the afternoon, and could have returned and been in the condition the witness found him, the next morning; such question calling for professional or expert opinion of the witness.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. A. H. ALSTON.

The appellant in this case was indicted, and tried for the murder of Jim Gordon, was convicted of murder in the first degree and sentenced to the penitentiary for life.

The facts of the case necessary to an understanding of the decision on the present appeal, are sufficiently shown in the opinion. The other rulings of the court upon the evidence, to which the defendant excepted, related to the admission of evidence tending to show a confession on the part of the defendant. It is, however, unnecessary to set out these facts in detail.

No counsel marked as appearing for appellant.

MASSEY WILSON, Attorney-General, for the State. The questions propounded to Dr. Brasfield were properly not allowed. The jury were as competent to form an opinion on the subject as was the doctor. *Holmes v. State,* 100 Ala. 180.

McCLELLAN, C. J.—The evidence adduced by the State went to show that Kirk Dixon shot and killed Jim Gordon, as charged in the indictment, on the premises of the latter about nine or ten o'clock on the third Sunday night in August. Defendant as a witness denied all connection with the homicide, and testified that throughout that night, for a day before and several days after he was sick at the house of one S. Moore, which was six miles from the scene of the homicide. There was other evidence that he went to Moore's the day before, and, complaining of being sick, sent on Sunday for Dr. Brasfield to minister to him. Dr. Brasfield's testimony was as follows: "That he went to see defendant on that Sunday afternoon and found him sick in bed at S. Moore's house; that defendant had about 103½ degrees of fever; that he felt his pulse but did not take his temperature with a thermometer; that he was suffering with malaria with bilious complications; that he got to his patient about half past four o'clock Sunday afternoon and stayed with him about twenty or twenty-five minutes; that he gave him a dose of calomel and left five more doses to be taken at hour intervals till the five were taken; that he is a regular practicing physician; that he knew Jim Gordon and knew where he lived; that Jim's house was six miles from S. Moore's house where the de-

fendant was when he went to see him; that he went back
to S. Moore's house at 8 o'clock the next morning, and
saw the defendant, and that the defendant was still in
bed, and that he had no fever, and that his pulse and
temperature were then normal." After the witness had
thus testified, the defendant propounded the following
question to him: "Doctor, you say you saw your patient
Sunday afternoon about 4:30 o'clock and that he then
had 103½ degrees of fever and was suffering from ma-
laria, and that you saw him again next morning at 8
o'clock and found his pulse and temperature normal,
could this patient in the condition in which you found
him Sunday afternoon have gotten up and walked six
miles and killed a man and returned and have been in
the normal condition in which you found him at 8 o'clock
Monday morning?" To this question the court sus-
tained an objection, and then defendant asked this: "In
your opinion is it probable that the defendant in the con-
dition in which you found him Sunday afternoon and
Monday morning could have walked six miles and killed
Jim Gordon Sunday night somewhere about 9 or 10
o'clock and have returned and been in the condition he
was when you visited him Monday morning?" The court
also sustained an objection to this question. We under-
stand both of the questions to call for the professional
opinion of the witness whether a person suffering from
malaria with bilious complications, and a high fever late
in the afternoon could walk twelve miles and go through
the ordeal of killing a man over night and be free from
fever and of normal pulse early the next morning. This
is, of course, a matter for expert opinion. Neither the
jury nor the court could know what effect the physical
exertion of walking so great a distance and the mental
excitement incident to doing murder would have upon a
man in defendant's condition. A physician would know
whether such conduct on the part of the defendant would
likely aggravate his fever overnight. Assuming an opin-
ion that it would, the fact that the defendant had no
fever the next morning, taken in connection with the
opinion, would be a pertinent circumstance tending to

show that the defendant had not gone to Jim Gordon's house and killed him. It is the same legal question as if it had been shown that the defendant was desperately ill on the eve of the homicide, in the last stages of consumption for instance, and his physician's opinion had been that he could not have gone to Gordon's, killed him, returned, and himself survived the night, and that he was alive the next day; or, for further illustration, the question stands upon the same legal footing as if it had been shown that the defendant was critically ill and in a very weak and helpless state, and the physician's opinion as to whether he could have walked to and from Gordon's house at all; and it seems clear to us that such expert opinion in either of the cases stated would have been competent. Our conclusion is that the circuit court erred in sustaining objections to these questions calling for the expert opinion of the witness Brasfield, to the effect that the defendant's condition on Sunday afternoon was such that he could not have walked to Gordon's that night and killed him and returned to S. Moore's and been in the physical condition he was found to be in at 8 o'clock the next morning.

There is no merit in any of the exceptions to other rulings of the trial court.

Reversed and remanded.